**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**LEONARD BRAYNEN, JR.,**

    **Petitioner,**

**v.**          **Civil Action No. 5:17-CV-151**
             **(JUDGE STAMP)**

**MICHAEL MARTIN,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 2, 2017, Petitioner, acting pro se, filed a Petition for a Writ of Habeas Corpus against Respondent John T. Murphy, pursuant to 28 U.S.C. § 2254. ECF No. 1. By order dated September 11, 2018, Michael Martin was substituted as Respondent for John T. Murphy. ECF No. 14. On January 30, 2019, Respondent filed an answer requesting that the Court deny Petitioner's requested relief and dismiss the petition with prejudice. ECF No. 27, at 30. On April 22, 2019, Petitioner filed his response to Respondent's answer to the petition. ECF No. 34. The matter is now pending before this Court for a review and Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A.    Conviction and Sentence

On April 3, 2009, Petitioner drove a group of college students to Oglebay Park in Ohio County, West Virginia, for a fraternity formal. ECF No. 1-3, at 2. The victim, who was a passenger in one of the two party buses, consumed too much alcohol on the ride and fell asleep in a cabin once they arrived. Id. Her friends checked on her throughout the night. Id. At one point, one of her friends observed Petitioner leaving the room where the victim was sleeping. Id. When she turned on the light, the victim stirred and exclaimed, "What happened? Someone just raped me!" Id. When confronted by the students, Petitioner admitted to being in the victim's room, but denied that he sexually assaulted her. Id.

During the investigation by the Ohio County Sheriff's Department, Petitioner spoke with officers after being given Miranda warnings and signing a waiver. Id. at 3. It is undisputed that Petitioner also consented to provide biological and physical evidence. Id. A search warrant was also obtained to collect the same evidence. Id. The victim's DNA was found on Petitioner's penis. Id. Petitioner was thereafter indicted on two counts of second-degree sexual assault in Ohio County Circuit Court. Id.

During the pre-trial process, the trial court held a McGinnis[1] hearing to determine the admissibility of Rule 404(b) evidence that showed Petitioner had previously assaulted another woman who was incapacitated due to intoxication. Id. In that instance, Petitioner had driven the victim and others on a party bus and assaulted the victim when she passed

---

[1] In State v. McGinnis, 455 S.E.2d 516 (W. Va. 1994), the West Virginia Supreme Court of Appeals ("WVSCA") held that an in camera hearing is required when an offer of evidence is made pursuant to Rule of Evidence 404(b).

out on the bus. Id. The State also presented evidence of Petitioner's prior conviction in Ohio for indecent exposure. Id. The trial court ruled that both pieces of evidence offered by the State were admissible in Petitioner's case. Id.

Subsequently, Petitioner chose to enter an Alford/Kennedy[2] plea to one count of second-degree sexual assault, and the State agreed to dismiss the other count of second-degree sexual assault. ECF No. 1-5, at 3. On November 9, 2009, at the beginning of the plea hearing, the trial court advised Petitioner as follows: "If at any time you wish to confer with your attorney, you certainly are free to do so. You can do it either at counsel table, or you can go back to the jury room and take as much time as you need." Plea Hr'g Tr., ECF No. 27-2, at 4. Petitioner affirmed that he understood these instructions. Id. The trial court warned Petitioner that, as a result of his conviction, he may be subject to a term of supervised release following his incarceration. Id. at 6. When the trial court asked Petitioner whether he understood this, he responded, "Can I take a minute?" Id. Thereupon, the hearing transcript reflects that a discussion occurred off the record. Id. Petitioner subsequently told the trial court, "All right, sir." Id.

After the trial court finished explaining the nature of supervised release, Petitioner's trial counsel responded as follows:

> Your Honor, if I might interject, I realize Your Honor needs to cover these matters in detail and the detail you're covering them. [Petitioner] is a Bahamian national because he's—if the Court accepts his plea and enters the plea of guilty—considered to have committed [an] offense that, under INS regulations is view[ed] as a deportable offense.

---

[2] An Alford/Kennedy plea occurs when a criminal defendant wishes to maintain his or her innocence, but acknowledges that the State has sufficient evidence to obtain a conviction and accepts a plea in order to avoid the imposition of a greater sentence after trial. See Kennedy v. Frazier, 357 S.E.2d 43 (W. Va. 1987); North Carolina v. Alford, 400 U.S. 25 (1970).

> Immediately upon his discharge from the [West Virginia Division of Corrections ("DOC")], he'd be deported back.

Id. at 7. Petitioner did not ask for a recess to discuss deportation with his trial counsel, and Petitioner did not otherwise indicate a lack of understanding on the record as the trial court and his trial counsel discussed the impact of Petitioner's citizenship on his supervised release and sex offender registration requirements under West Virginia law. Id. at 7–9.

In response to the trial court's questioning, Petitioner acknowledged that he understood the plea agreement and that his trial counsel had answered all of his questions about the plea agreement. Id. at 12. The trial court asked Petitioner whether he fully understood the consequences of his plea agreement, and Petitioner affirmed that he did. Id.

The trial court then investigated Petitioner's satisfaction with his trial counsel's representation. Id. at 13. The court asked if Petitioner was satisfied with his trial counsel's representation, to which Petitioner responded, "Yes, sir." Id. The court asked if Petitioner thought his trial counsel had done anything improper, to which Petitioner responded, "No, no, sir." Id. The court asked whether Petitioner's trial counsel had explained all of the defenses that Petitioner would have to the charges, to which Petitioner responded, "yes, sir." Id. The court asked whether Petitioner had any complaints with respect to his trial counsel, to which Petitioner responded, "No, sir." Id.

After the conclusion of the plea colloquy, the court asked Petitioner whether he still desired to plead guilty, and Petitioner answered affirmatively. Id. at 18. Upon Petitioner's affirmation, the State proceeded to proffer its evidence of Petitioner's guilt. Id. at 19–22. Upon conclusion of the State's proffer, Petitioner's trial counsel explained, in front of

4

Petitioner and on the record, that with respect to the testimony from two eye-witnesses, "the time line doesn't add up very well. There's some serious holes in the State's case as far as we're concerned." Id. at 23. Petitioner did nothing to interrupt his trial counsel to confer with him regarding the inconsistencies in the witness statements. Id. Uninterrupted, Petitioner's trial counsel proceeded to give the rationale for Petitioner's Kennedy/Alford plea:

> However, in light of the fact that the Court has ruled that the Rule 404(b) evidence will come in, we believe that that would function as the tipping point for the jury if this matter were to proceed to trial.
>
> And given the fact that the—what's at stake here is [an] additional 10– to 25–year sentence if [Petitioner] would be convicted of both [counts], and if the Court would sentence him consecutively, that, despite the fact that he maintains his innocence about what happened, that his overall interests are served best by entering this plea.

Id. Thereafter, the trial court found the State's proffer sufficient and allowed Petitioner to enter a Kennedy/Alford plea to one count of second-degree sexual assault. Id. at 26. The trial court accepted petitioner's plea as properly made. Id.

After a brief recess, the trial court proceeded to the sentencing phase of the hearing. Id. at 26–27. The court asked Petitioner whether he waived his right to a presentence investigation report. Id. at 27. Though the waiver of that right was included in the plea agreement, the hearing transcript reflects that Petitioner conferred with his trial counsel off the record prior to waiving his right to a presentence investigation report. Id. Next, the court allowed Petitioner to exercise his right of allocution. Id. at 28–29. Following another discussion off the record, Petitioner apologized to the victim and her family, "ask[ing them] from the bottom of [their] heart to forgive [him]." Id. at 29. Petitioner also

5

thanked his trial counsel and the State for "working with [him] and giving [him] the opportunity . . . some day to be released and return . . . to [his] family, [his] two beautiful daughters[,] and [his] parents back in the Bahamas[.]" Id. at 28–29. Thereafter, the trial court imposed the statutorily-specified sentence of ten to twenty-five years of incarceration. Id. at 34.

### B.   Direct Appeal

Petitioner did not file a direct appeal in his criminal case.

### C.   First State Habeas Corpus Petition ("Omnibus Final Petition for Habeas Corpus")

On April 1, 2010, Petitioner filed a pro se petition for habeas corpus in Ohio County Circuit Court in case number 10-C-138. ECF No. 27-5. On February 2, 2012, habeas counsel filed an Amended Petition—the Omnibus Final Petition for Habeas Corpus. ECF No. 27-6. The petition alleged two grounds of error. First, Petitioner alleged that the local authorities, including Petitioner's retained trial counsel, were required to notify the Bahamian consulate of Petitioner's detainment. ECF No. 1-2, at 4. Petitioner asserted that failure to do so (1) constituted a violation of Article 36 of the Vienna Treaty,[3] (2) required the court to invoke the exclusionary rule vis-à-vis Petitioner's statements to police and the physical and biological evidence obtained from Petitioner with his consent, and (3) constituted ineffective assistance of trial counsel. Id. Second, Petitioner alleged that the trial court's Rule 404(b) ruling was erroneous, and it significantly affected his decision to enter the Kennedy/Alford plea. Id.

---

[3] While the undersigned will uniformly refer to this treaty as the "Vienna Treaty" based on the petition's language, its formal title is the "Vienna Convention on Consular Relations." See Sanchez-Llamas v. Oregon, 548 U.S. 331, 331 (2006).

The circuit court denied relief as to each of Petitioner's allegations of error. Id. at 6–10. As to the first allegation of error, the court found that under Article 36 of the Vienna Treaty, the onus was on Petitioner to request the Bahamian consulate be contacted and that there was no evidence or argument that Petitioner ever requested the Bahamian consulate be contacted regarding his detention and the criminal investigation. Id. at 7. Further, the court concluded that it was not ineffective assistance of trial counsel to not contact the Bahamian consulate, because the consulate could have only secured counsel for Petitioner, something Petitioner's father had already done by retaining trial counsel. Id. at 8. As to the second allegation of error, the court found that the challenge to a pretrial ruling was not proper in a petition for habeas corpus and that Petitioner had waived any challenge he had to the trial court's Rule 404(b) ruling when he entered his guilty plea. Id. at 9.

### D.   First State Habeas Corpus Appeal

On April 15, 2015, Petitioner, by counsel, filed an appeal with the West Virginia Supreme Court of Appeals ("WVSCA") in docket number 15-0334, challenging the denial of his petition for habeas corpus. ECF No. 27, at 6. The WVSCA denied relief on April 8, 2016, by memorandum decision. ECF No. 1-3.[4] That decision addressed only one assignment of error: that the circuit court erred in finding that the alleged violation(s) of the Vienna Treaty by the State of West Virginia did not make Petitioner's subsequent Kennedy/Alford plea unknowing, coerced, and involuntary. ECF No. 1-3, at 3. In footnote 11, the WVSCA noted that Petitioner "d[id] not appeal the circuit court's ruling that [P]etitioner's counsel was not ineffective." Id. at 6. In footnote 10, the WVSCA stated that

---

[4] This WVSCA memorandum decision is attached to the petition in the instant case, but it can also be found at: Braynen v. Plumley, No. 15-0334, 2016 WL 1417688 (W. Va. Apr. 8, 2016).

"Petitioner does not argue that the 404(b) ruling is constitutional in nature or, standing alone, constitutes sufficient grounds for reversal of the circuit court's habeas order. Given our conclusion that the circuit court did not err with respect to the alleged Article 36 violation, we need not address the propriety of the court's 404(b) ruling." Id. The WVSCA found that Petitioner's sole allegation of error did not merit relief because violations of Article 36 of the Vienna Treaty did not warrant invoking the exclusionary rule or permit Petitioner to withdraw his guilty plea. Id. at 4.

> ### E.   Second State Habeas Corpus Petition

On May 16, 2016, Petitioner, acting pro se, filed a second habeas corpus petition in the Ohio County Circuit Court in case number 16-C-151. ECF No. 27-9. Petitioner raised two assignments of error: (1) ineffective assistance of habeas counsel for failing to raise an ineffective assistance of counsel claim against trial counsel for trial counsel's alleged failure to explain or pursue several evidentiary matters, and (2) ineffective assistance of trial counsel for failing to inform Petitioner at the time of his plea that he would be deported upon completion of his prison sentence. ECF No. 1-4, at 3.

On August 5, 2016, the circuit court denied relief as to each of Petitioner's allegations of error. Id. at 4–5. As an initial matter, the court concluded that to the extent Petitioner could have raised these issues in his first habeas petition, they had been previously adjudicated/waived. Id. at 4. Out of an abundance of caution, the court went on to consider each assignment of error on the merits. Id. As to the first allegation of error, the court found that because Petitioner entered into a guilty plea, he waived his ability to challenge the State's evidence. Id. Accordingly, it was not ineffective assistance of habeas counsel not to raise an ineffective assistance of trial counsel claim for trial

counsel's failure to pursue evidentiary issues. Id. at 4–5. As to Petitioner's second allegation of error, the court found that Petitioner did not cite any documentation or evidence supporting his contention that he will be deported after serving his sentence, so there was "no way to determine the veracity of this allegation vis-à-vis Petitioner's request for relief." Id. at 5.

### F.   Second State Habeas Corpus Appeal

On November 16, 2016, Petitioner appealed the denial of his second habeas petition in WVSCA docket number 16-0789. ECF No. 27-12. The WVSCA denied relief on August 25, 2017, by memorandum decision. ECF No. 1-5, at 8.[5] As to Petitioner's first assignment of error, the WVSCA determined that the transcript of Petitioner's plea hearing refuted his claim that his trial counsel failed to explain that he would be deported. Id. at 7. Additionally, the WVSCA noted that Petitioner's allocution at his plea hearing indicated that Petitioner was aware that he would be deported after serving his sentence. Id.

As to Petitioner's second allegation of error, the WVSCA determined that Petitioner's trial counsel knew of the inconsistent witness statements and this was explained in front of Petitioner at the plea hearing. Id. The record reflected that Petitioner knew how to confer with his counsel if he felt it was necessary during the plea hearing, so it was significant that Petitioner never interrupted his trial counsel to discuss the inconsistent witness statements. Id. at 7–8. The WVSCA determined that Petitioner did not show his trial counsel's representation fell below an objective standard of reasonableness or that, arguendo, even if it did, Petitioner would have gone to trial. Id.

---

[5] This WVSCA memorandum decision is attached to the petition in the instant case, but it can also be found at: Braynen v. Plumley, No. 16-0789, 2017 WL 3643022 (W. Va. Aug. 25, 2017).

Petitioner recognized the reduction in potential sentence he received in exchange for his guilty plea. Id. at 8.

### G.    Instant Federal Habeas Corpus Petition

On October 2, 2017, Petitioner filed the instant § 2254 petition in this Court. ECF No. 1. Petitioner, who is in state custody, alleges four grounds of relief in his petition:

(1) Violations of Article 36 of the Vienna Treaty:

> a. The police did not inform Petitioner of his right to contact the Bahamian Consulate of his arrest and detention, rendering his consent to a search of his person and the giving of biological samples unknowing and involuntary. ECF No. 1-1, at 1.

> b. Petitioner raises a broader challenge to the voluntariness of his statement to police, claiming that the court did not make accommodations to ensure he received the benefits of Consular Service, rendering his consent to search involuntary and unknowing. Id.

> c. The arresting officer did not inform Petitioner of his right to contact the Bahamian Consulate, resulting in his imprisonment for five and one-half months with no knowledge of said right, which severely hampered Petitioner's ability to knowingly and voluntarily enter the plea agreement with the State. Id.

(2) Ineffective assistance of counsel in regard to the Violations of Article 36 of the Vienna Treaty, because (trial) counsel failed to inform Petitioner of his rights thereunder and failed to contact the Consular on his behalf, severely hampering his ability to knowingly and voluntarily enter into the plea agreement. Id. at 1–2.

(3) Illegal entry of 404(b) evidence violated Petitioner's 14th Amendment Due Process right, in that the State sought to enter testimony regarding a previous sexual assault and a previous conviction for indecent exposure. The trial court conducted the proper McGinnis hearing, but should not have ruled the evidence to be admissible because no charges were filed against Petitioner for the prior sexual assault. He claims this severely hampered his ability to knowingly and voluntarily enter the plea agreement. Id. at 2.

(4) Ineffective assistance of habeas counsel and trial counsel because:

> a. Petitioner's trial counsel should have known that eyewitnesses gave conflicting accounts of the events surrounding the sexual assault, and trial counsel did not make Petitioner aware of the exonerating statements of Mr. Bigler, the victim's statement to a witness she dreamed she was going to "come here and get raped." Petitioner contends he would not have pled guilty if he had known. Id. at 2–3.

> b. No one told Petitioner "he would in fact be deported." Had he known, he would not have pled guilty. Id. at 4.

> c. Petitioner's habeas counsel did not raise or develop the "factual matters raised herein" and did not raise the issue of trial counsel being ineffective for failing to inform him of deportation. Id.

### H.    Respondent's Answer to the Petition

On January 30, 2019, Respondent filed his Answer to Petitioner's § 2254 Petition for Habeas Corpus. ECF No. 27. As to Petitioner's second and third allegations of error, Respondent contends that they are procedurally defaulted because those issues were never presented to the WVSCA and Petitioner is now procedurally barred from asserting them before the WVSCA. Id. at 10–16. As to Petitioner's first allegation of error, Respondent contends that the WVSCA's application of federal law regarding Article 36 of the Vienna Treaty was reasonable and accurate and supported by the factual record. Id. at 21. As to Petitioner's fourth allegation of error, Respondent contends that Petitioner cannot offer any reasonable argument that his trial or habeas counsel provided constitutionally deficient representation, and even if Petitioner could offer such argument, there is no evidence that Petitioner would have insisted on going to trial. Id. at 27.

### I.    Petitioner's Response to Respondent's Answer

11

On April 22, 2019, Petitioner filed his response to Respondent's Answer. ECF No. 34. Therein, Petitioner contends that the evidence of his prior sexual assault of an intoxicated woman, which was presented at the 404(b) McGinnis hearing, was fabricated and used as a "false weapon" to induce Petitioner into pleading guilty. Id. at 1. Petitioner maintains that he has no history of such actions and the evidence was used to coerce a guilty plea from him. Id. at 2. Petitioner contends that it was error for the trial court to rule the "fabricated" evidence admissible. Id. at 3.

### III.  LEGAL STANDARD

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, the undersigned is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts.

#### B.    Petitions for Habeas Corpus Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the

standards set forth in § 2254(d), which provides that the habeas petition of a person in State custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, the factual determinations by the state courts are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, when reviewing a petition for habeas relief, a federal court uses the "highly deferential lens" mandated by the AEDPA. DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. Williams v. Taylor, 529 U.S. 362, 364 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405) (internal quotations

omitted). A writ of habeas corpus may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." Id. at 300–01 (internal marks omitted).

Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." Williams, 529 U.S. at 365.

## IV.  ANALYSIS

Petitioner seeks the writ habeas corpus herein upon four grounds, all of which have been raised in initial state habeas proceedings.[6] However, Petitioner's second and third grounds for relief were not presented to the WVSCA in Petitioner's state habeas appeal. Accordingly, the undersigned will first address the issue of procedural default with respect to Petitioner's second and third grounds for relief before addressing Petitioner's first and fourth grounds for relief on the merits.

### A.      Second and Third Grounds for Relief Are Procedurally Defaulted

In his second ground for relief in his federal habeas petition, Petitioner argues that his trial counsel was ineffective for not informing Petitioner of his rights as a Bahamian citizen under Article 36 of the Vienna Treaty. ECF No. 1-1, at 1–2. This issue was raised in Petitioner's first state habeas petition at the circuit court level, ECF No. 1-2, at 4, but it

---

[6] The undersigned also notes that the instant federal habeas petition has been timely filed under the ADEPA, as discussed by Respondent in his Answer. ECF No. 27, at 9–10.

was not presented to the WVSCA on habeas appeal. ECF No. 1-3, at 6 ("Petitioner does not appeal the circuit court's ruling that [P]etitioner's counsel was not ineffective.").

In his third ground for relief in his federal habeas petition, Petitioner argues that the trial court's 404(b) ruling was improper and hampered Petitioner's ability to knowingly and voluntarily enter into a plea agreement with the State. ECF No. 1-1, at 2. This issue was raised in Petitioner's first state habeas petition at the circuit court level, ECF No. 1-2, at 4, but it was not presented to the WVSCA on habeas appeal. ECF No. 1-3, at 6 ("Petitioner does not argue that the 404(b) ruling is constitutional in nature or, standing alone, constitutes sufficient grounds for reversal of the circuit court's habeas order. Given our conclusion that the circuit court did not err with respect to the alleged Article 36 violation, we need not address the propriety of the court's 404(b) ruling.").

A petition for writ of habeas corpus on behalf of a prisoner in State custody is not to be entertained by a federal court unless the petitioner has first exhausted his State remedies. See 28 U.S.C. § 2254(b)(1). The Supreme Court has held that, to "provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added). Principles of comity dictate that the State must first be afforded a full and fair opportunity to pass upon and correct the alleged violation of its prisoners' federal rights. See Duncan v. Henry, 513 U.S. 364, 365 (1995); Castille v. Peoples, 489 U.S. 346, 349 (1989).

To exhaust available State remedies, a habeas petitioner must fairly present the substance of his claim to the State's highest court. See Duncan, 513 U.S. at 365–66 ("If state courts are to be given the opportunity to correct alleged violations of prisoners'

federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). In West Virginia, the exhaustion of State remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction State habeas corpus proceeding followed by an appeal to the WVSCA. See Moore v. Kirby, 879 F. Supp. 592, 593 (S. D. W. Va. 1995); see also Bayerle v. Godwin, 825 F. Supp. 113, 114 (N. D. W. Va. 1993). A federal court may only consider those issues the petitioner presented to the State court, and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of [the ADEPA], if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

Under the ADEPA, some claims will be considered "technically" exhausted because they fall into one of the two exceptions to the exhaustion requirement, i.e., "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). For example, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."[7] Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). "However, the procedural bar that gives rise to exhaustion [in such a circumstance] provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted

---

[7] In other words, a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer available to him." Boothe v. Ballard, No. 2:14-cv-25165, 2016 WL 1275054, at *43 (S. D. W. Va. Mar. 31, 2016).

claim, unless the petitioner can demonstrate cause and prejudice for the default." Id. (quoting Gray, 518 U.S. at 162).

This is known as the doctrine of procedural default (or procedural bar): "If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts." Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000). Simply put, as a general matter, "a federal court may not consider claims that a petitioner failed to raise at the time and in the manner required under state law." Teleguz v. Zook, 806 F.3d 803, 807 (4th Cir. 2015).[8]

In West Virginia,

> the post-conviction habeas corpus statute, W.Va.Code, 53-4A-1 et seq. (1967) contemplates that every person convicted of a crime shall have a fair trial in the circuit court, an opportunity to apply for an appeal to th[e WVSCA], and one omnibus post-conviction habeas corpus hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated.

Losh v. McKenzie, 277 S.E.2d 606, 609 (W. Va. 1981). The West Virginia "[p]ostconviction habeas corpus statute . . . clearly contemplates that [a] person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one postconviction habeas corpus proceeding[.]" Syl. Pt. 1, Markley v. Coleman, 601 S.E.2d 49, 51 (W. Va. 2004) (quoting Syl. Pt. 1, in part, Gibson v. Dale, 319 S.E.2d 806 (W. Va. 1984)). "At the omnibus habeas corpus hearing, a petitioner is required to raise all

---

[8] The undersigned notes that procedural default may be excused if a petitioner "can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable [state procedural] rule." Bostick v. Stevenson, 589 F.3d 160, 164 (4th Cir. 2009). However, Petitioner has not raised any such issues or made any such showing in the instant petition and response. See ECF Nos. 1, 1-1, & 34.

grounds known or that reasonably could be known by the petitioner." Id. at 52–53. "At subsequent habeas corpus hearings, any grounds raised at a prior habeas corpus hearing are considered 'fully adjudicated' and need not be addressed by the circuit court." Id. at 53.

This rule comes from West Virginia Code § 53-4A-1(c), which creates a rebuttable presumption that a state habeas petitioner knowingly and intelligently waives any claim that could have been presented during a state habeas proceeding, but that was not presented at that time. Accordingly, when a petitioner fails to raise an issue in his habeas appeal, he may be fairly considered to have waived his right to bring that issue again before a West Virginia court. See Boothe, 2016 WL 1275054, at *44 (citing W. Va. Code § 53-4A-1(c)) ("Petitioner waived his right to again bring these Unexhausted Claims before West Virginia courts when he failed to previously raise these claims on habeas appeal."). In the context of the doctrine of procedural default, waiver under W. Va. Code § 53-4A-11(c) is considered an adequate and independent state-law ground for a petitioner's conviction and sentence. See id. at *48.

In this case, Petitioner did not present his second or third grounds for relief to the WVSCA. The undersigned concludes that he would be procedurally barred under W. Va. Code § 53-4A-1(c) from presenting these claims again in state court.[9] Accordingly, the

---

[9] The undersigned is mindful that "[i]f any reasonable possibility exists that the state court may apply an exception to its procedural default rule, the federal court should not apply a state procedural bar to find that exhaustion is futile." Meadows v. Legursky, 904 F.2d 903, 909 (4th Cir. 1990), abrogated on other grounds by Trest v. Cain, 522 U.S. 87 (1997). However, in this case, Petitioner's first state habeas petition was an omnibus final petition for habeas corpus, and specifically stated that "it shall incorporate all of the grounds that the Petitioner wishes this Honorable Court to consider." ECF No. 27-6, at 1. Petitioner was represented by counsel for his omnibus final petition for habeas corpus and his appeal of the same. Id. at 11; ECF No. 27-8, at 14. In Petitioner's first habeas appeal brief, in which he was represented by counsel, "the parties and the Court considered the matters presented in the Petition to be questions of law;" accordingly, no evidentiary hearing was held on Petitioner's omnibus final petition. Id. at 7. Petitioner has not presented, and the undersigned has not found, any reason to conclude that Petitioner would be able to assert his

undersigned finds that Petitioner's second and third grounds for relief are procedurally defaulted and should be **DISMISSED WITH PREJUDICE**.

>   **B.     First Ground for Relief: Alleged Violations of Article 36 of the Vienna Treaty**

In the instant petition, Petitioner alleges three violations of Article 36 of the Vienna Treaty:[10]

>   a. The police did not inform Petitioner of his right to contact the Bahamian Consulate of his arrest and detention, rendering his consent to a search of his person and the giving of biological samples unknowing and involuntary. ECF No. 1-1, at 1.
>
>   b. Petitioner raises a broader challenge to the voluntariness of his statement to police, claiming that the court did not make accommodations to ensure he received the benefits of Consular Service, rendering his consent to search involuntary and unknowing. Id.
>
>   c. The arresting officer did not inform Petitioner of his right to contact the Bahamian Consulate, resulting in his imprisonment for five and one-half months with no knowledge of said right, which severely hampered Petitioner's ability to knowingly and voluntarily enter the plea agreement with the State. Id.

These three alleged violations can be reduced to the claim that Petitioner was not informed of his right to contact the Bahamian Consulate, and therefore his consent to the police search and his decision to plead guilty were not fully knowing and voluntary.

In Petitioner's first state habeas appeal, the WVSCA addressed whether Article 36 of the Vienna Treaty had been violated and, if so, whether Petitioner was correspondingly prejudiced. ECF No. 1-3, at 3–4. In its analysis, the WVSCA relied on the Supreme

---

second and third grounds for relief to the WVSCA on the merits, having chosen not to do so in his habeas appeal of his final omnibus petition.

[10] The undersigned notes that these are not alleged to be constitutional violations; however, the Vienna Treaty is a matter of federal law and therefore, subject to this Court's review in a § 2254 petition.

Court's decision in Sanchez-Llamas v. Oregon, 548 U.S. 331 (2006). The WVSCA noted

that the Vienna Treaty "does not prescribe specific remedies for violations of Article 36.

Rather it expressly leaves the implementation of Article 36 to domestic law: Rights under

Article 36 are to be exercised in conformity with the laws and regulations of the receiving

State." Braynen v. Plumley, No. 15-0334, 2016 WL 1417688, at *3 (W. Va. Apr. 8, 2016)

(quoting Sanchez-Llamas, 548 U.S. at 343) (internal quotation marks omitted). The

WVSCA further observed that

> [t]he violation of the right to consular notification . . . is at best
> remotely connected to the gathering of evidence . . . . [Article
> 36] secures only a right of foreign nationals to have their
> consulate *informed* of their arrest or detention—not to have
> their consulate intervene, or to have law enforcement
> authorities cease their investigation pending any such notice
> or intervention. In most circumstances, there is likely to be
> little connection between an Article 36 violation and evidence
> or statements obtained by police.

Id. (quoting Sanchez-Llamas, 548 U.S. at 349). The WVSCA noted that "[s]uppression

would be a vastly disproportionate remedy for an Article 36 violation." Id. (quoting

Sanchez-Llamas, 548 U.S. 349). Based on this analysis of Supreme Court precedent, the

WVSCA concluded that "the circuit court did not abuse its discretion in refusing to apply

the exclusionary rule in [Petitioner's] case" and "common sense dictates that if the

exclusionary rule is not an appropriate remedy for an alleged Article 36 violation, it

logically follows that withdrawal of a guilty plea is, likewise, not appropriate." Id.

Accordingly, the WVSCA denied Petitioner's request to withdraw his guilty plea on

account of any Article 36 violation that may have occurred.[11] Id.

---

[11] The WVSCA noted that there was no evidence in the record whether the consulate was advised on
Petitioner's detention, so it simply took as true Petitioner's assertion that the Bahamian consulate was not
so advised in its analysis. Braynen, 2016 WL 1417688, at *2 n.7. The WVSCA also noted that there was

Reviewing Petitioner's claim under the § 2254(d)(1) standard, there is no indication that the WVSCA's decision was contrary to clearly established federal law as determined by the Supreme Court. If anything, the question is whether the WVSCA's application of federal law as determined by the Supreme Court was reasonable. The undersigned concludes that it was.

Supreme Court precedent, as articulated in Sanchez-Llamas, clearly indicates that applying the exclusionary rule is a drastic remedy for an Article 36 violation. The Sanchez-Llamas Court recognized that the exclusionary rule is primarily to deter constitutional violations and where the sole violation is of Article 36, but no other constitutional violations have occurred, application of the exclusionary rule is inappropriate. See Sanchez-Llamas, 548 U.S. at 348. In Petitioner's case, there was no evidence that, beyond the alleged Article 36 violations, other constitutional violations had occurred. As noted by the WVSCA, investigating officers obtained a search warrant for the same evidence for which Petitioner provided his consent on the same day that Petitioner consented to the search. Braynen, 2016 WL 1417688, at *3 n.9. Therefore, the WVSCA reasonably applied federal law as determined by the Supreme Court to affirm the circuit court's decision not to apply the exclusionary rule.

Furthermore, the WVSCA reasonably interpreted federal law to conclude that the far more drastic remedy of allowing Petitioner to withdraw his guilty plea is likewise inappropriate to remedy a lone Article 36 violation. The WVSCA was correct to note that notification of the consulate pursuant to Article 36 does not entitle a suspect to have their consulate intervene or have authorities cease their investigation. Id. at *3. The WVSCA

---

no evidence that Petitioner is, in fact, a Bahamian national, but it took this allegation as true as well. Id. at *2 n.6.

noted that Petitioner's argument rested entirely on the <u>Sanchez-Llamas</u> Court's comment that

> [a] defendant can raise an Article 36 claim as part of a broader challenge to the voluntariness of his statements to police. If he raises an Article 36 violation at trial, a court can make appropriate accommodations to ensure that the defendant secures, to the extent possible, the benefits of consular assistance.

<u>Id.</u> However, before speaking to police, Petitioner was advised of his <u>Miranda</u> rights and executed a <u>Miranda</u> waiver. <u>Id.</u> at *1. Further, Petitioner was represented by retained counsel during plea negotiations and his plea hearing. <u>See</u> ECF No. 1-2, at 8 (where the circuit court concluded that Article 36 guaranteed Petitioner only notification of his detention be provided to the consulate, if Petitioner so requested, and consular assistance in securing counsel for the criminal proceedings, which finding was not subject to further appeal); ECF No. 27-2, at 12–13 (where Petitioner indicates his satisfaction with his counsel's representation prior to entering his plea of guilty).

In sum, the undersigned concludes that the WVSCA's application of federal law, i.e. Article 36 of the Vienna Treaty, was reasonable and accurate and supported by the factual record. Accordingly, Petitioner's first ground for relief should be **DISMISSED WITH PREJUDICE**.

### C.     Fourth Ground for Relief: Alleged Ineffective Assistance of Counsel

In the instant petition, Petitioner alleges three grounds upon which he claims that he received ineffective assistance of counsel:

> a. Petitioner's trial counsel should have known that eyewitnesses gave conflicting accounts of the events surrounding the sexual assault, and trial counsel did not make Petitioner aware of the exonerating statements of Mr. Bigler, the victim's statement to a witness she dreamed she was

going to "come here and get raped." Petitioner contends he would not have pled guilty if he had known. ECF No. 1-1, at 2–3.

b. No one told Petitioner "he would in fact be deported." Had he known, he would not have pled guilty. Id. at 4.

c. Petitioner's habeas counsel did not raise or develop the "factual matters raised herein" and did not raise the issue of trial counsel being ineffective for failing to inform him of deportation. Id.

Grounds a. and b. are claims of ineffective assistance of trial counsel, and ground c. is a claim of ineffective assistance of Petitioner's first habeas counsel.

Claims of ineffective assistance of counsel are governed by the two-part analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Strickland requires that a petitioner show that: (1) his counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 689, 690. Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time of that conduct." Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Strickland, 466 U.S. at 688, 689).

When a petitioner raises a claim of ineffective assistance of counsel after pleading guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v.

Lockhart, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In a § 2254 proceeding, the ineffective assistance of counsel analysis differs somewhat from the Strickland analysis on direct review. In a § 2254 proceeding, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011). "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id. "Surmounting Strickland's high bar is never an easy task," id. at 105 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)), so "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. Strickland is highly deferential, and when § 2254(d) and Strickland apply "in tandem, review is 'doubly' so . . . ." Id. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The undersigned will turn first to Petitioner's a. and b. grounds for relief that claim his trial counsel was ineffective. As to ground a., the plea hearing transcript reflects that Petitioner's trial counsel knew about the inconsistent witness statements. ECF No. 1-2, at 22–23. In particular, trial counsel specifically mentioned, in front of Petitioner and on the record, the witness statements of Ms. Saunders and Mr. Bigler, of which Petitioner contends he was unaware when he pleaded guilty. Id. at 23 ("The witness statements with regard to Ms. Saunders and Mr. Biggler [sic], the time line doesn't add up very well.

24

There's some serious holes in the State's case as far as we're concerned.").[12] Additionally, the trial court asked Petitioner at the plea hearing if his trial counsel had explained all the defenses Petitioner had to the charges, to which Petitioner responded, "Yes, sir." Id. at 13.[13]

As to ground b., the plea hearing transcript further reflects that Petitioner was informed on the record that he would be deported immediately upon his discharge from incarceration. Id. at 7. Petitioner's trial counsel stated on the record and in front of Petitioner, "Mr. Braynen is a Bahamian national because he's—if the Court accepts his plea and enters the plea of guilty—considered to have committed the offense that, under INS regulations is view [sic] as a deportable offense. Immediately upon his discharge from the DOC, he'd be deported back." Id.[14] Petitioner recognized he was subject to deportation in his allocution: "I appreciate you guys working with me and giving me the opportunity—to give me the opportunity some day [sic] to be released and return back to my family, my two beautiful daughters and my parents back in the Bahamas . . . ." Id. at 28.[15]

During both the discussion of the inconsistent witness statements and Petitioner's eventual deportation, Petitioner never stopped the hearing to confer with his trial counsel, nor did he indicate that he did not understand the issues being discussed by his counsel and needed clarification. Petitioner told the trial court that he knew how to confer with

---

[12] The WVSCA relied on this in its finding of no ineffective assistance of trial counsel. Braynen, 2017 WL 3643022, at *5.

[13] The WVSCA relied on this in its finding of no ineffective assistance of trial counsel. Braynen, 2017 WL 3643022, at *5.

[14] The WVSCA relied on this in its finding of no ineffective assistance of trial counsel. Braynen, 2017 WL 3643022, at *5.

[15] The WVSCA relied on this in its finding of no ineffective assistance of trial counsel. Braynen, 2017 WL 3643022, at *5.

counsel should he not understand something, and Petitioner in fact took advantage of this during the plea hearing regarding the issues of supervised release and waiver of the presentence investigation report. Id. at 4, 6, 27.

The record therefore indicates that, contrary to Petitioner's assertions in the instant petition, he was aware of the inconsistent witness statements and his eventual deportation before he entered his plea of guilty. Even if this record were not sufficient to establish that Petitioner himself was aware of these issues, it certainly establishes that Petitioner's trial counsel was aware of those issues and brought them to the attention of Petitioner before he entered his plea of guilty. On this basis, the undersigned concludes that there is a reasonable argument that trial counsel's representation did not fall below an objective standard of reasonableness and that the WVSCA's application of Strickland was reasonable.

However, the WVSCA went one step beyond this in its Strickland analysis. The WVSCA concluded that even if trial counsel's representation was deficient under the first prong of Strickland, Petitioner had not demonstrated that but for that deficiency, he would have insisted in going to trial. Braynen, 2017 WL 3643022, at *6; see Hill, 474 U.S. at 59. At the plea hearing, Petitioner's trial counsel articulated why the plea agreement was in Petitioner's interest and the benefits he gained by pleading guilty. Trial counsel specifically noted that the trial court's 404(b) ruling would be the tipping point for a jury and Petitioner would be exposed to an additional 10 to 25 year sentence if he were convicted on both counts. ECF No. 1-2, at 23.[16] Petitioner further acknowledged that the

---

[16] The WVSCA relied on this in its finding of no ineffective assistance of trial counsel. Braynen, 2017 WL 3643022, at *6.

plea agreement provided him the opportunity to return to his family in a reasonable amount of time. Id. at 28.[17] Based on the record, the undersigned concludes that this provides the factual basis for a reasonable argument that Petitioner would not have insisted on going to trial, assuming his trial counsel's representation fell below an objective standard of reasonableness, and therefore, the WVSCA's application of Strickland was reasonable.

Finally, with respect to Petitioner's ground c. for relief, because the WVSCA determined that Petitioner's trial counsel was not ineffective, it concluded that it was not ineffective assistance of habeas counsel to not raise an ineffective assistance of trial counsel claim in Petitioner's first habeas petition. Braynen, 2017 WL 3643022, at *6. There is no constitutional right to assistance of counsel in state habeas proceedings. See Weeks v. Angelone, 176 F.3d 249, 273 (4th Cir. 1999); Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997) (en banc), cert. denied, 522 U.S. 1100 (1998). A Petitioner "ha[s] no right to counsel (effective or otherwise) on state habeas, and cannot claim ineffective assistance of state habeas counsel . . . ." Smith v. Angelone, 111 F.3d 1126 (4th Cir. 1997); see also Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). Accordingly, the undersigned concludes that Petitioner is not entitled to federal habeas relief on ground c.[18]

---

[17] The WVSCA relied on this in its finding of no ineffective assistance of trial counsel. Braynen, 2017 WL 3643022, at *6.

[18] The undersigned notes that "a petitioner may claim a due process violation occurring in his state habeas proceeding, but he may not premise this claim solely on the alleged ineffective assistance of state habeas

In sum, the WVSCA's application of federal law, i.e. <u>Strickland</u> ineffective assistance of counsel, was reasonable and accurate and supported by the factual record. Accordingly, Petitioner's fourth ground for relief should be **DISMISSED WITH PREJUDICE**.

## V.  RECOMMENDATION

For the reasons herein stated, the undersigned recommends that Petitioner's § 2254 Petition for a Writ of Habeas Corpus [ECF No. 1] be **DENIED** and **DIMISSED WITH PREJUDICE**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

---

counsel." <u>Weeks</u>, 176 F.3d at 274. Here, Petitioner does not allege a due process violation occurred during his state habeas proceeding. ECF No. 1-1, at 8 (alleging only a Sixth Amendment violation).

This Report and Recommendation completes the referral from the District Court. The Clerk is directed to terminate the Magistrate Judge association with this case.

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Amended Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Amended Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED:       June 6, 2019

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE